UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| NORMAN YOSHIMOTO, | No. C 10-05438 LB |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| O'REILLY AUTOMOTIVE, INC., *et al.*, | [ECF No. 24] |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Norman Yoshimoto is suing his former employer Defendant O'Reilly Automotive, Inc. (successor to CSK Auto, Inc.), asserting six claims related to alleged discrimination. Complaint, ECF No. 1.[1] Specifically, Yoshimoto alleged claims for national origin discrimination and racial discrimination, age discrimination, retaliation, harassment, and failure to take reasonable steps to prevent discrimination and harassment. *Id.* at 12-21.[2] O'Reilly Automotive brings the instant motion for summary judgment, arguing that the doctrine of judicial estoppel bars Yoshimoto from bringing these claims because he concealed them from the bankruptcy court. Motion, ECF No. 24 at 12. All parties have consented to this court's jurisdiction. ECF Nos. 7, 10, and 13.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[2] The other causes of action and Defendant Ronald Stahl were dismissed by the state court. Opposition, ECF No. 29 at 7.

The court **DENIES** O'Reilly Automotive's motion for summary judgment primarily because the application of the doctrine of judicial estoppel to bar Yoshimoto from bringing the claims would harm the creditors of the estate and there might be other solutions to police Yoshimoto's inconsistencies without punishing the creditors.

## II.  FACTS

### A. Undisputed Material Facts

Between 1998 and November 2, 2009, Plaintiff worked for Defendants as a District Manager before being demoted on November 2, 2009. Joint Statement of Undisputed Material Facts, ECF No. 28 at 2.

At some time between March 12, 2009 and June 25, 2009, Yoshimoto retained his current counsel, John F. Prentice & Associates, APC, to "represent his interest[s] related to discrimination, retaliation and harassment" allegedly suffered as an employee of O'Reilly Automotive. *Id.*  On or around June 11, 2009, Yoshimoto filed an administrative complaint against Defendants with the Department of Fair Employment and Housing ("DFEH") and Equal Employment Opportunity Commission ("EEOC") alleging harassment, retaliation and discrimination. *Id.*  On or around June 25, 2009, Yoshimoto's counsel sent Defendants a letter informing them that Yoshimoto had retained him "to represent his interest related to discrimination, retaliation and harassment" allegedly suffered at Defendants' hands, disclosing and containing the June 11, 2009 administrative complaint against Defendants, and asking Defendants to contact him about these matters or he would "advise [his] client as to other appropriate steps he may take to protect his interest and his employment rights with" Defendants. *Id.*[3]  On or around July 9, 2009, the DFEH issued Yoshimoto a Right-to-Sue Notice, which stated "[t]his Right-to-Sue Notice allows you to file a private lawsuit in State court."

---

[3] Yoshimoto objects to the admission of the letter under Rule 408 (compromise and offers to compromise) and Rule 802 (hearsay) of the Federal Rules of Evidence. Opposition, ECF No. 29 at 10. But Yoshimoto submitted this *fact* as part of the parties' joint statement of undisputed material facts, *see* ECF No. 28 at 1. Thus, the court may consider the fact and, moreover, considers any objection to the supporting document waived. As noted below in n.4, Yoshimoto's objections to the January 4, 2010 letter are rejected for the same reasons. Because the court does not rely on the email correspondence submitted as O'Reilly Automotive's Exhibit 6 or the December 3, 2010 letter submitted as O'Reilly Automotive's Exhibit 7, Yoshimoto's objections to these documents are moot.

1  *Id.* at 3.

2  On or around November 13, 2009, Yoshimoto filed a supplemental administrative complaint
3  against Defendants with the DFEH and EEOC, alleging further discrimination, retaliation and
4  harassment. *Id.* On or around November 18, 2009, the DFEH issued Yoshimoto another
5  Right-to-Sue Notice which again stated , "[t]his Right-to-Sue Notice allows you to file a
6  private lawsuit in State court." *Id.* As of November 17, 2009, Plaintiff had made claims for
7  discrimination, retaliation and harassment against Defendants. *Id.* As of this date, Yoshimoto had
8  retained bankruptcy counsel to assist in filing for voluntary Chapter 7 bankruptcy. *Id.*

9  The next day, on November 18, 2009, Yoshimoto filed for Chapter 7 bankruptcy by filing his
10  voluntary petition. *Id.* Yoshimoto did not disclose his legal claims against Defendants in either the
11  bankruptcy schedules, which directed Yoshimoto list all of his claims and other personal property,
12  or the statement of financial affairs, which directed Yoshimoto to list all suits and administrative
13  proceedings to which he had been a party in the preceding year. *Id.* at 4-5.

14  On or around December 16, 2009, the bankruptcy trustee in Plaintiffs Chapter 7 proceedings
15  filed a "Report of No Distribution," certifying that, based on "[k]ey information about this case as
16  reported in schedules filed by the debtor," that "there is no property available for distribution from
17  the estate over and above that exempted by law." *Id.* at 6-7.

18  On or around December 29, 2009, Yoshimoto filed two amended administrative complaints
19  against Defendants with the DFEH and EEOC, alleging discrimination, retaliation, and harassment.
20  *Id.* at 5. On or around December 30, 2009, the DFEH issued Yoshimoto two additional Right-to-
21  Sue Notices which stated, "[t]his Right-to-Sue Notice allows you to file a private lawsuit in State
22  court." *Id.* at 6.

23  On January 4, 2010, Yoshimoto's counsel Mr. Prentice sent Defendants correspondence
24  noting his retention by Yoshimoto, including the amended administrative complaints, and inviting
25  Defendants' "attorney to contact [him] to discuss [his] clients [sic] pending claims." *Id.*[4]

26

27  [4] Yoshimoto objects to the admission of the letter under Rule 408 (compromise and offers to
28  compromise) and Rule 802 (hearsay) of the Federal Rules of Evidence. Opposition, ECF No. 29 at
10. The court rejects these objections as per the considerations discussed above in n.3.

C 10-05438 LB
ORDER DENYING MOTION FOR SUMMARY JUDGMENT    3

On or around January 13, 2010, the DFEH issued Plaintiff another Right-to-Sue Notice which again stated, "[t]his Right-to-Sue Notice allows you to file a private lawsuit in State court." *Id.*

On February 9, 2010, Yoshimoto filed this current lawsuit. *Id.* The allegations in the Second Amended Complaint have not been amended, and involve allegations of discrimination, retaliation and harassment arising from events pre-dating November 18, 2009. *Id.*

On or around February 17, 2010, the bankruptcy court granted a discharge to Yoshimoto under 11 U.S.C. § 727. *Id.* at 7.

On or around January 18, 2011, Yoshimoto moved to re-open his bankruptcy case and to amend his bankruptcy schedules to add his claims against Defendants. *Id.*

### B. Additional Facts About Which Only the Materiality is in Dispute

On February 11, 2011, the bankruptcy court reopened Yoshimoto's case. *Id.* at 8. In its entirety, the order stated, "Based on the Ex Parte Motion to Reopen Case, the Declaration in support thereof, and good cause appearing therefore, IT IS HEREBY ORDERED that bankruptcy case no. 09-71037 RLE7 is reopened." Plaintiff's Request for Judicial Notice, Exh. V, ECF No. 32 at 4.

On February 22, 2011, Yoshimoto amended his bankruptcy schedules to disclose his employment claims. Joint Statement of Undisputed Material Facts, ECF No. 28 at 7. On April 14, 2011, the bankruptcy trustee applied for an order approving a compromise of claim exemption with Yoshimoto. *Id.* In the declaration filed with the bankruptcy court, the bankruptcy trustee stated that "[i]t is [his] opinion that the compromise reached [between he and Plaintiff] is fair and equitable, and in the best interests of the estate." *Id.* The compromise explained "the compromise is for a very reasonable percentage of what the estate is likely to realize considering that the claims asserted in the Employment Discrimination Lawsuit are both pre and post-petition claims." Plaintiff's Request for Judicial Notice, Exh. W, ECF No. 32 at 8.

### C. Additional Facts from the Public Record

On May 12, 2011, the bankruptcy court approved the compromise. Plaintiff's Supplemental Request for Judicial Notice, Order, Exh. X, ECF No. 34 at 4. The bankruptcy court stated that the agreement was for the bankruptcy estate to receive 45% of any recovery remaining after compensating special counsel in the instant lawsuit "in which [Yoshimoto] is complaining of

1 employment discrimination, retaliation and wrongful discharge." *Id.*

## III.  LEGAL STANDARDS

**A. <u>Summary Judgment</u>**

Summary judgment is proper if the pleadings, the discovery and disclosures on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets this initial burden, the non-moving party must go beyond the pleadings and – by its own affidavits or discovery – set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

**B. <u>Judicial Estoppel</u>**

Federal law on judicial estoppel governs cases in federal courts regardless of whether they involve state law claims. *Johnson v. Or. Dep't of Human Res. Rehab. Div.*, 141 F.3d 1361, 1364 (9th Cir. 1998); *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996). Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

Judicial estoppel may be invoked by the court at its discretion. *Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1991). It is intended to protect the integrity of the judicial process by preventing a

1 litigant from "playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th
2 Cir. 1990). In the bankruptcy context, where the plaintiff fails to disclose potential claims in his
3 bankruptcy schedules and thereafter sues on them, the invocation of the doctrine serves to protect
4 the bankruptcy system, which depends on full and honest disclosure by debtors of all their assets.
5 *Hamilton*, 270 F.3d at 785. When a debtor's disclosures are incomplete, they impair the interests of
6 the creditors (who plan their actions in the bankruptcy proceeding based on information in the
7 disclosures) and the bankruptcy court (which decides to approve a plan based on the information).
8 *Id.*

9 Several factors help determine whether judicial estoppel applies. *Id.* at 782 (citing *New
10 Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). "'First, a party's later position must be 'clearly
11 inconsistent' with its earlier position.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750). In the
12 bankruptcy context, this inconsistency may result "from asserting a cause of action not raised in a
13 reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.*
14 at 783. Second, the party must have "'succeeded in persuading a court to accept that party's earlier
15 position.'" *Id.* at 782 (quoting *New Hampshire*, 532 U.S. at 750). "'Third, the party seeking to
16 assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on
17 the opposing party if not estopped.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751). These factors
18 are not " 'inflexible prerequisites or an exhaustive formula' " because "'[a]dditional considerations
19 may inform the doctrine's application in specific factual contexts.'" *Id.* (quoting *New Hampshire*,
20 532 U.S. at 751). Another factor is whether the party to be estopped acted inadvertently or with an
21 intent to defraud the court or creditors. *Johnson*, 141 F.3d at 1369 ("If incompatible positions are
22 based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply.").

23 **C. Unscheduled Pre-Petition Claims**

24 Section 541(a)(1) of title 11 of the United States Code provides that a bankruptcy estate is
25 comprised of "all legal or equitable interests of the debtor in property as of the commencement of
26 the case." A cause of action becomes "property of the bankruptcy estate as of the Petition Date,
27 even though the Action was not listed in the schedules, and property that is neither abandoned nor
28 administered remains property of the estate even after the case is closed." *In re Lopez*, 283 B.R. 22,

28 (9th Cir. BAP 2002).

The debtor has an ongoing affirmative obligation to disclose all its assets and liabilities to the bankruptcy court in its petition and before discharge, including pending and contingent claims. Fed. R. Bank.. P. 1007(b)(I); 11 U.S.C. §§ 521(a)(I), 541(a)(l); *Hamilton*, 270 F.3d at 785.

Once appointed, a bankruptcy trustee becomes the representative of the estate and succeeds to the debtor's right to pursue causes of action which are the property of the estate. 11 U.S.C. § 323(a); *see In re Alcala*, 918 F.2d 99, 102 (9th Cir.1990). "[A] chapter 7 trustee can . . . prosecute [an action], settle it, abandon it, or arrange for [the debtor] to prosecute it in exchange for the estate receiving a share of the proceeds." *See In re Lopez*, 283 B.R. at 28.

## IV.  DISCUSSION

The court first analyzes the *New Hampshire* factors. Then, the court discusses the other considerations and arguments made by the parties as to whether judicial estoppel is appropriate, including the alleged bad faith of Yoshimoto and the impact applying judicial estoppel would have on the estate's creditors.

### A. **Whether Yoshimoto Took Inconsistent Positions**

In evaluating whether judicial estoppel should be applied, the first factor to be considered is whether the later position of the party seeking to assert inconsistent positions is clearly inconsistent with its earlier position. *Hamilton*, 270 F.3d at 782 (quoting *New Hampshire*, 532 U.S. at 750). A court may find a clear inconsistency when a debtor files a lawsuit "asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.* at 783. In this case, it is undisputed that Yoshimoto took inconsistent positions.

But the pre-petition claims at issue in this case are assets of the bankruptcy estate, and the trustee of the bankruptcy estate is essentially pursuing the claims (albeit through Yoshimoto by stipulated agreement). "Judicial estoppel does not apply to a bankruptcy trustee when the debtor's conduct occurred after the bankruptcy petition was filed." *Coble v. DeRosia*, No. 1:10–CV–00259 AWI JLT, 2011 WL 1883801, at *3 (E.D. Cal. May 16, 2011). As the court in *Coble* discussed, the Eleventh Circuit has held that judicial estoppel does not apply to the bankruptcy trustee when the debtor took inconsistent positions in bankruptcy court and district court because the trustee made no

1  false or inconsistent statement under oath in a prior proceeding and was not tainted or burdened by
2  the debtor's misconduct. *Parker v. Wendy's International Inc.*, 365 F.3d 1268, 1271–73 (11th Cir.
3  2004). This means that the calculation for applying judicial estoppel is different when the trustee
4  pursues the claims. *See In re Cheng*, 308 B.R. 448, 454-455 (9th Cir. BAP 2004) ("[I]t would be
5  extraordinary for the trustee in the garden-variety bankruptcy to be estopped on account of
6  something the debtor did for its own account during the case."). The court, however, continues its
7  analysis, mindful that Yoshimoto has a direct stake in the litigation and remains the named party.

### B. Whether Yoshimoto Succeeded in Persuading a Court to Accept His Earlier Position

The second factor to be considered is whether the party seeking to assert an inconsistent position succeeded in persuading a court to accept that party's earlier position. *Hamilton*, 270 F.3d at 782. A bankruptcy court accepts a prior inconsistent statement when it discharges the debtor's debts in reliance on his omission of known claims, even if the discharge is later vacated. *Id.* at 784-85. Here, it is undisputed that the bankruptcy court accepted Yoshimoto's prior inconsistent statement by relying on the omission in its discharge of his debts. *See* Trustee's Report, Exh. 3, ECF No. 24-2 at 18-19 (noting that "there is no property available for distribution from the estate over and above that exempted by law" based on information reported in schedules).

### C. Whether Yoshimoto Would Derive an Unfair Advantage or Impose an Unfair Detriment If Not Estopped

The third factor is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Hamilton*, 270 F.3d at 782. Here, the undisputed facts establish that Yoshimoto obtained the benefits of receiving a discharge of his debts and, if permitted to proceed, would retain 55% of any recovery from the pre-petition claims that otherwise would have gone to the creditors of the bankruptcy estate. Thus, the court finds that Yoshimoto would derive an unfair advantage. *See id.* at 785.

### D. Whether Yoshimoto Acted Inadvertently or With an Intent to Defraud the Court or Creditors

Another factor is whether the party to be estopped acted inadvertently or with an intent to defraud the court or creditors. *Johnson*, 141 F.3d at 1369. But the Ninth Circuit has not applied this

factor in the bankruptcy context. *See Funtanilla v. Swedish Hosp. Health Services*, No. C09-1226JLR, 2011 WL 65945, at *4 n.3 (W.D. Wash. Jan. 10, 2011) ("In the bankruptcy context, however, the Ninth Circuit has not recognized an exception for inadvertence or mistake. Rather, the debtor's failure to disclose, on its own, gives rise to judicial estoppel." (citing *Hamilton*, 279 F.3d at 783)). And the Fifth Circuit has held that a "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Coastal Plains*, 179 F.3d 197, 210 (5th Cir. 1999). In this case, Yoshimoto only claims that he did not list the claims because he did not know that they had any value. Ex Parte Motion to Reopen Case, Exh. P, ECF No. 24-3 at 138. Moreover, the veracity of Yoshimoto's assertion is questionable given that he had retained a lawyer to pursue the claims prior to filing for bankruptcy and, in a later court submission, estimated the value of the claims at more than $2.6m. Joint Statement of Undisputed Material Facts, ECF No. 28 at 2; Plaintiff's Response to Defendants' Request for Statement of Damages, ECF No. 24-2 at 24.

**E. Yoshimoto's Arguments Opposing Application of Judicial Estoppel**

**1. Whether the Bankruptcy Court Already Has Considered the Equities**

Yoshimoto largely forgoes refuting the application of the *New Hampshire* factors to this case. Instead, Yoshimoto argues that the bankruptcy court considered the equities in ordering Yoshimoto's bankruptcy case reopened to allow the filing of amended schedules. Opposition, ECF No. 29 at 11-12. O'Reilly Automotive responds that there is no evidence that the bankruptcy court considered the equities and that it is irrelevant in any case. Without needing to address O'Reilly Automotive's latter contention, the court rejects Yoshimoto's argument. As the Ninth Circuit Bankruptcy Appellate Panel ("BAP")[5] has stated, "reopening a case is typically ministerial and 'presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee.'" *In re Lopez*, 283 B.R. at 26 (quoting *In re Menk*, 241 B.R. 896,

---

[5] The Ninth Circuit has stated that decisions from the Bankruptcy Appellate Panel are "treat[ed] as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit." *See In re Silverman*, 616 F.3d 1001, 1005 n.1 (9th Cir. 2010).

916–17 (9th Cir. BAP 1999)). The BAP in *In re Lopez* further stated that "it is an abuse of discretion to deny a motion to reopen where 'assets of such probability, administrability, and substance' appear to exist 'as to make it unreasonable under all the circumstances for the court not to deal with them.'" *Id.* at 27 (quoting *In re Herzig*, 96 B.R. 264, 266 (9th Cir. BAP 1989)). In this case, the claims were assets of the estate and were administerable with some potential value. Moreover, the bankruptcy court's order did not provide any discussion or analysis of the equities at play here. Plaintiff's Supplemental Request for Judicial Notice, Order, Exh. X, ECF No. 34 at 4.

**2. Whether It Would Be Inequitable to Apply Judicial Estoppel Given the Compromise Agreement**

Yoshimoto also claims that his agreement with the bankruptcy trustee supports his position that it would be inequitable to apply judicial estoppel because the agreement provides the bankruptcy estate with 45% of any recovery in his pre-petition and post-petition claims even though the post-petition claims are not part of the bankruptcy estate. Opposition, ECF No. 29 at 12; Agreement, Exh. W., ECF No. 32 at 8. But O'Reilly Automotive points out that Yoshimoto's complaint does not contain any post-petition claims. Reply, ECF No. 37 at 5.[6] At the hearing, Yoshimoto's counsel clarified that the agreement was intended to encompass both pre-petition and post-petition claims and that a complaint asserting post-petition claims would be filed shortly along with a notice that it is related to this case.

**3. Whether the Instant Facts Are Distinguishable from the Precedent Cited by O'Reilly Automotive**

Yoshimoto seeks to distinguish his case from the decisions cited by O'Reilly Automotive, noting that he amended his schedules unlike the parties in *Hamilton* and *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555 (9th Cir. 1992). Opposition, ECF No. 29 at 14. The court finds this highly relevant and discusses the implications further below.

///

---

[6] O'Reilly Automotive raises evidentiary objections to portions of Yoshimoto and Postar's declarations. Reply, ECF No. 37 at 18-19. Because the court's order does not rely on the statements, the objections are moot.

**4. Whether O'Reilly Automotive Should be Collaterally Estopped From Arguing that Yoshimoto Misrepresented the Value of His Claims to the Bankruptcy Court**

Additionally, Yoshimoto claims that O'Reilly Automotive should be collaterally estopped from arguing that Yoshimoto misrepresented the value of his claims to the bankruptcy court because O'Reilly Automotive has asserted that the claims had no value. Opposition, ECF No. 29 at 15-16. O'Reilly Automotive responds that Yoshimoto failed to establish that the elements of collateral estoppel are applicable against it. Reply, ECF No. 37 at 14. O'Reilly Automotive also argues that the merits of Yoshimoto's claims have nothing to do with the concealment of those claims and that only the latter is at issue. *Id.* Finally, O'Reilly Automotive notes that it did not file demurrers on every cause of action and, thus, Yoshimoto cannot rely solely on the demurrers. *Id.* The court agrees with O'Reilly Automotive. Yoshimoto provides a single, general case citation in support of his position and engages in no substantive application of the law to the facts that would support the application of collateral estoppel against O'Reilly Automotive.[7]

**5. Whether O'Reilly Automotive's Motion for Summary Judgment Pierces the Pleadings**

Yoshimoto also asserts that O'Reilly Automotive's motion for summary judgment does not "pierce the pleadings," as contemplated by the *Celotex* decision. Opposition, ECF No. 29 at 15. Again, Yoshimoto does not provide any additional legal authority or substantive analysis to support this statement and it ignores the numerous instances in which summary judgment has been deemed appropriate in similar cases. *See, e.g., Hamilton*, 270 F.3d at 785; *Hay*, 978 F.2d at 557.

**F. Court's Assessment of the Equities and Underlying Policy Concerns**

The court has an obligation to ensure that litigants are not provided with incentives to deceive

---

[7] The party invoking collateral estoppel bears the burden of establishing each of its elements. *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir.1994). The doctrine of collateral estoppel promotes judicial economy and protects parties from the burden of successive litigation by barring the relitigation of issues in certain circumstances. *Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007). The circumstances are that (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992).

the legal system. *Hamilton*, 270 F.3d at 782; *Russell*, 893 F.2d at 1037.  In the bankruptcy context, various circuit courts – including the Ninth Circuit – have recognized that the bankruptcy system relies on full disclosure by debtors. *See Hamilton*, 270 F.3d at 785.  O'Reilly Automotive argues that the *Hamilton* court found that the preservation of judicial and bankruptcy integrity is of paramount importance.  Reply, ECF No. 37 at 10-11 (citing *Hamilton*, 270 F.3d at 785).  O'Reilly Automotive further asserts that Ninth Circuit precedent holds that it is better to uphold this global principle and the system-at-large than to reward known concealment for the benefit of an individual estate and its creditors. *Id.*  In support of these positions, O'Reilly Automotive points to the *Hamilton* court's statement that the application of judicial estoppel in such cases furthers "[t]he interests of both *the creditors,* who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court." *Hamilton*, 270 F.3d at 785.  And, as O'Reilly Automotive notes, in *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), the Eleventh Circuit prohibited the plaintiff from amending his bankruptcy disclosures when the proposed amendment was prompted by an opponent's motion for summary judgment, finding that such relief "suggests that a debtor should consider disclosing potential assets only if he is caught concealing them" and that this "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets."

In this case, the undisputed facts suggest that permitting Yoshimoto to pursue his claims would vindicate his earlier lack of disclosure, implicating the policy concerns described above.

But, as O'Reilly Automotive acknowledges, judicial estoppel in bankruptcy cases presents competing policies of maximizing creditor recovery versus upholding the integrity of the judicial system and precluding party-litigant advantages through self-contradiction.  Reply, ECF No, 37 at 11.  And O'Reilly Automotive's characterization of the Ninth Circuit's application of the judicial estoppel doctrine in other cases involving unscheduled pre-petition claims overstates the extent to which that this precedent requires trial-level courts *always* to bar litigants from bringing claims that were concealed previously from a bankruptcy court.  Simply put, the Ninth Circuit's approval of a district court's application of judicial estoppel to bar a litigant from bringing claims that were concealed previously from a bankruptcy court does not imply that another trial-level court cannot

come to a different conclusion given other facts. As the Ninth Circuit affirmed, the *New Hampshire* factors discussed above are not " 'inflexible prerequisites or an exhaustive formula' " because "'[a]dditional considerations may inform the doctrine's application in specific factual contexts.'" *Hamilton*, 270 F.3d at 782 (quoting *New Hampshire*, 532 U.S. at 751).

Moreover, O'Reilly Automotive's assertion that in *Hay*, the court judicially estopped plaintiffs where the doctrine affected only creditor recovery is not quite on point. Reply, ECF No. 37 at 11. In *Hay*, the Ninth Circuit affirmed a grant of summary judgment, based on judicial estoppel, in favor of the defendants where the plaintiffs brought pre-petition claims after failing to give the required notice to the bankruptcy court. *Hay*, 978 F.2d at 556. The Ninth Circuit rejected the argument that the equities favor its proceeding for the benefit of creditors whose shares of the estate might be enhanced. *Id.* But the court stated that is ruling did not reach the rights of the creditors themselves to move to reopen the bankruptcy proceedings. *Id.* at 557.

The BAP's decision in *In re Cheng*, 308 B.R. 448 (9th Cir. BAP 2004), *aff'd* 160 Fed. Appx. 646 (9th Cir. 2005), provides a direct counterpoint to O'Reilly Automotive's attempts to understate the concerns with applying judicial estoppel to bar claims that might enhance the recovery of creditors. In *In re Cheng*, the appellants avoided a judicial lien on their home, in part, by claiming that a creditor, K & S Diversified Investments, possessed a secured debt against the Chengs' home in the amount of $268,054. 308 B.R. at 452. The Chengs subsequently objected to the amount of K & S's proof of claim, arguing that the value of the secured debt was only $156,000. *Id.* K & S moved for summary judgment on the basis of judicial estoppel because the Chengs benefitted from the higher debt valuation when they sought to avoid the lien on their home. *Id.* The bankruptcy court granted summary judgment, finding that the Chengs' two positions on the value of the debt were inconsistent and judicial estoppel was necessary to protect the integrity of the bankruptcy system. *Id.* at 458. The BAP reversed and remanded on the following two grounds: (1) the bankruptcy court abused its discretion by failing to consider the different capacities in which the Chengs asserted their claims (as individuals in the first action and as debtors-in-possession with the fiduciary duties of a trustee in the latter); and (2) the remedy of judicial estoppel punished the Chengs' unsecured creditors, violating the requirement that a court not do inequity in the name of equity. *Id.* at 458-59.

1    To the latter point, the BAP in *Cheng* first explained that judicial estoppel is an equitable

2 doctrine and, therefore, "must be grounded on notions of fairness and preventing injustice." *Id.* at

3 459. The *Cheng* BAP then applied these principles to the case at hand. *Id.* Like the instant case, the

4 defendants in *Cheng* moved for summary judgment on the basis of judicial estoppel. *Id.* Given this

5 posture, the Chengs' allegations had to be taken as true and the defendants were presumed to have

6 overstated the amount of the secured debt, resulting in a surplus of about $50,000 for the creditors.

7 *Id.* But applying the remedy of judicial estoppel merely transferred the $50,000 windfall to the

8 defendant who, in the summary judgment context, is presumed to have done the alleged bad acts.

9 *Id.* at 460. The BAP thus stated:

10    In this circumstance, the remedy selected by the bankruptcy court does not satisfy the requirements of equity to avoid doing inequity. Although there is good reason to
11    estop the Chengs, there is no good reason to estop the estate or visit harm on the general body of creditors. K & S should not be permitted to enrich itself unjustly at
12    the expense of the unsecured creditors just because the debtors made the first inequitable move

13 *Id.*

14    The *Cheng* BAP stated that often the solution is to reopen the bankruptcy case and order the

15 appointment of a trustee who, as owner of the cause of action, can determine whether to deal with

16 the cause of action for the benefit of the estate. *Id.* The *Cheng* BAP viewed this solution as being in

17 accord with the bankruptcy statutes, which make pre-petition claims part of the bankruptcy estate,

18 automatically stay any court action to protect the property so long as it retains status, permit opening

19 a closed case for the purpose of administering assets, and authorize a trustee to prosecute any action

20 on behalf of the estate. *Id.* at 460-61.

21    The *Cheng* BAP viewed this approach as consistent with Ninth Circuit precedent, noting that the

22 court in *Hay* did not necessarily preclude the creditors from vindicating the rights of the estate and

23 that the externality problem did not exist in *Hamilton*. *Id.* at 461 (citing *Hay*, 978 F.2d at 557).

24    The *Cheng* BAP suggested possible solutions to minimize any advantage that might accrue to the

25 debtor who took inconsistent positions, including reducing the fee award of the lawyer who created

26 the problem. *Id.* The *Cheng* BAP stated that the court is free to resolve the claim on the merits

27 before deciding what to do about the debtors' inconsistent positions. *Id.*

28    The Seventh Circuit laid out similar reasoning, in dicta, in *Biesek v. Soo Linger R. Co.*, 440 F.3d

410 (7th Cir. 2006). In *Biesek*, a debtor concealed a claim from the bankruptcy court and then later sought to pursue it. 440 F.3d at 411. The district court granted summary judgment in the defendant's favor, invoking the doctrine of judicial estoppel. *Id.* at 412. The judge thought that Biesek should not benefit by his fraud on the creditors in the bankruptcy. *Id.* Seven months after the district court's decision was issued, Biesek and the trustee of his bankruptcy trustee reached a stipulation, granting Biesek the first $7,000 of any claim and then turning over the rest to the estate. *Id.* The Seventh Circuit affirmed because the claim belonged to the bankruptcy estate and could not have been pursued by Biesek (prior to the stipulation). *Id.* at 413 (noting that neither Biesek nor the trustee asked for a remand so that the trustee could take over the case). But the Seventh Circuit, in dicta, stated, "Biesek's nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his FELA claim would complete the job by denying creditors even the right to seek some share of the recovery." *Id.* The Seventh Circuit noted that te creditors had not contradicted themselves in court. *Id.* The Seventh Circuit then stated:

> Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application. Instead of vaporizing assets that could be used for the creditors' benefit, district judges should discourage bankruptcy fraud by revoking the debtors' discharges and referring them to the United States Attorney for potential criminal prosecution.

*Id.*

On the other hand, the Ninth Circuit affirmed a district court's application of judicial estoppel in a similar case where the district court determined that "the Court's interest in protecting the judicial system outweighs the interest of plaintiff's creditors or the value of preventing a windfall to defendants." *Laisure-Radke v. Barr Laboratories, Inc.*, No. C03-3654RSM, 2006 WL 1727978, at *4 (W.D. Wash. June 22, 2006), *aff'd*, *Laisure-Radke v. Barr Laboratories, Inc.*, 313 Fed. Appx. 32 (9th Cir. 2009), *but see Craft v. Demeyer Furniture, Inc.*, No. 1:10-CV-230-BLW, 2011 WL 573595 (D. Idaho Feb. 13, 2011) (explicitly disagreeing with this statement and declining to follow *Laisure*).

Although the court agrees that Yoshimoto has taken inconsistent positions and might benefit unfairly from any recovery, the court is unwilling to apply judicial estoppel to bar the action when the bankruptcy trustee has determined to pursue the claims (albeit through Yoshimoto), recovery might aid the bankruptcy estate's creditors, and there might be other solutions to police Yoshimoto's

inconsistencies without punishing the creditors (e.g., the bankruptcy court might revisit its order approving the compromise if it believes that Yoshimoto misrepresented the scope of this lawsuit).

### V.  CONCLUSION

For the foregoing reasons, the court **DENIES** Defendants' motion for summary judgment. The court also **ORDERS** Yoshimoto to provide a copy of this opinion to the bankruptcy court.

This disposes of ECF No. 24.

**IT IS SO ORDERED.**

Dated: June 6, 2011

_____
LAUREL BEELER
United States Magistrate Judge